IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES EVANS,

        Plaintiff,                No. 2:09-cv-0292 WBS JFM (PC)

    vs.

FELKER, et al.,

        Defendants.             __FINDINGS & RECOMMENDATIONS__

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  This matter is before the court on defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

        Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

1   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

2   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

3   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

4   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

5   after adequate time for discovery and upon motion, against a party who fails to make a showing

6   sufficient to establish the existence of an element essential to that party's case, and on which that

7   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

8   concerning an essential element of the nonmoving party's case necessarily renders all other facts

9   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

10  whatever is before the district court demonstrates that the standard for entry of summary

11  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

12          If the moving party meets its initial responsibility, the burden then shifts to the

13  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

14  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

15  establish the existence of this factual dispute, the opposing party may not rely upon the

16  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

17  form of affidavits, and/or admissible discovery material, in support of its contention that the

18  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

19  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

20  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

21  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

22  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

23  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

24  1436 (9th Cir. 1987).

25          In the endeavor to establish the existence of a factual dispute, the opposing party

26  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

2

1   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

2   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

3   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

4   genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

5   committee's note on 1963 amendments).

6           In resolving the summary judgment motion, the court examines the pleadings,

7   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

8   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

9   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

10  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

11  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

12  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

13  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

14  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

15  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

16  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

17  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

18          On September 9, 2009, the court advised plaintiff of the requirements for

19  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

20  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and

21  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

22  _____ANALYSIS

23          This action is proceeding on three claims raised in plaintiff's third amended

24  complaint, filed August 20, 2009.  Specifically, plaintiff claims that his rights under the Eighth

25  Amendment were violated by use of excessive force on plaintiff at California State Prison-Solano

26  (CSP-Solano) during a cell extraction performed in connection with plaintiff's transfer to High

Desert State Prison (High Desert), and a conspiracy to place plaintiff in administrative

segregation at High Desert.  Plaintiff also claims that the alleged conspiracy violated California

Penal Code § 1242.[1]  In addition, plaintiff claims that he was "placed at [High Desert] with the

defendants having prior knowledge that plaintiff would have problems and end up in Ad-Seg for

a lengthy period of time where his access to the courts would be hindered."  Third Amended

Complaint, filed August 20, 2009, at 8.[2]

Defendants seeks summary judgment on several grounds.  First, defendant

Terrazas contends that his use of pepper spray on plaintiff did not violate the Eighth Amendment

because it was not used maliciously and sadistically for the purpose of causing harm.  Second,

defendants Terrazas and Nuehring[3] contend that the use of pepper spray and extraction of

plaintiff from his cell did not violate the Eighth Amendment because they were not aware of any

risk from these events, no risk was present, and plaintiff suffered no injury.  Third, defendants

Singh and Telford seek summary judgment on the ground that they were unaware of any risk to

plaintiff's health or safety when they recommended his transfer to High Desert.  Fourth,

defendants contend that their actions did not cause plaintiff to participate in a riot at High Desert.

Finally, defendants contend they are entitled to qualified immunity.

I. <u>Facts</u>[4]

At all times relevant to this action, plaintiff was an inmate in the California

Department of Corrections and Rehabilitation (CDCR).  The action concerns events connected to

---

[1]  Plaintiff's claim that his constitutional rights were violated by his transfer to High Desert and his claim against defendants Felker and McDonald were dismissed by order filed May 5, 2010.

[2]  As noted above, claims that plaintiff's constitutional rights were violated by his transfer to High Desert were dismissed by order filed May 5, 2010.  By the pending motion, defendants have placed in issue the specific claim described <u>supra</u>, which arguably was not encompassed by the dismissal order.

[3]  Identified in the third amended complaint as defendant Numering.

[4]  Except as expressly noted, the facts are undisputed.

1  plaintiff's transfer from CSP-Solano to High Desert.  At all times relevant to this action, all of

2  the defendants were CDCR employees working at CSP-Solano.

3         On July 12, 2007, plaintiff appeared before an institutional classification

4  committee at CSP-Solano.  Defendants Telford and Singh were on the committee.  Because

5  plaintiff's custody score had recently increased due to rules violation convictions, defendants

6  recommended that plaintiff be transferred from CSP-Solano, a Level III prison, to High Desert, a

7  Level IVprison.

8         On the morning of October 3, 2007, plaintiff was housed alone in a cell in

9  Building 11 of the Administrative Segregation Unit (ASU) at CSP-Solano.  Defendant Terrazas

10  went to plaintiff's cell and told him he was being transferred to High Desert.  Plaintiff became

11  distraught and threatened to kill himself by taking prescription medication and holding up a

12  razor.  Defendant Terrazas ordered a correctional officer to observe plaintiff's cell and requested

13  a psychiatric technician to observe and communicate with plaintiff.  Defendant Terrazas also

14  informed his lieutenant about plaintiff's suicide threat.

15         Procedures at CSP-Solano require correctional staff to perform emergency cell

16  extractions of ASU inmates who attempt to harm themselves.

17         When correctional staff perform an emergency cell extraction in
           ASU, the following procedure is followed:  (1) correctional staff

18         order the inmate to drop all weapons; (2) if the inmate refuses to
           drop all weapons, correctional staff open the food port at the

19         inmate's cell and pepper-spray the inmate until the inmate drops all
           weapons; (3) once the inmate drops all weapons, correctional staff

20         order the inmate to face the cell door backwards, place his hands
           through the food port, and submit to handcuffs; (4) once the inmate

21         is placed in handcuffs, correctional staff open the cell door; (5)
           correctional staff then order the inmate to lie down face-first on the

22         ground so they can apply leg restraints; (6) if the inmate refuses the
           order to lie down, or resists, correctional staff must force the

23         inmate to the ground and hold him there while leg restraints are
           applied; and (7) after placing the inmate in leg restraints,

24         correctional staff escort the inmate to the medical department.

25  Defendants' Ex. C, Declaration of R. Terrazas in Support of Defendants' Motion for Summary

26  Judgment, filed November 30, 2010, at ¶ 13.

5

1    After plaintiff made his first suicide threat, a correctional lieutenant called by

2 defendant Terrazas tried to convince plaintiff to submit voluntarily to handcuffs.  Plaintiff

3 refused and again threatened to commit suicide.  Defendant Nuehring subsequently also tried to

4 convince plaintiff to submit voluntarily to handcuffs so that he could be transferred to High

5 Desert.  Plaintiff refused.  While talking to defendant Nuehring, plaintiff took some prescription

6 medication.[5]  The correctional lieutenant radioed an "attempted suicide" call, to which defendant

7 Terrazas responded.  When defendant Terrazas arrived back at plaintiff's cell, plaintiff again

8 threatened suicide by threatening to take prescription medication and holding up a razor.

9 Defendant Terrazas then performed an emergency cell extraction.

10    In performing the extraction, defendant Terrazas pepper-sprayed plaintiff through

11 the food port in the cell door to get plaintiff to drop the razor.  After defendant Terrazas pepper-

12 sprayed plaintiff submitted to being placed in handcuffs.  The parties dispute what happened

13 next.

14    Defendants have presented evidence that plaintiff was brought out of his cell and

15 ordered to lie on the ground, that plaintiff's resisted that order, that correctional staff forced

16 plaintiff to the ground because he was resisting being placed in leg restraints, and that neither

17 defendant Terrazas nor defendant Nuehring assisted the officers who brought plaintiff to the

18 ground.  Terrazas Decl. at ¶¶25-28; Defendants' Ex. D, Declaration of J.A. Nuehring in Support

19 of Defendants' Motion for Summary Judgment, at ¶ 20.

20    At his deposition, plaintiff testified that after he was pepper sprayed he was

21 "basically immobile" and officers "ran up in there with the gear on and dragged me out there and

22 slammed me on my head, they slammed me face forward to the ground.  I am going like this to

23 the ground, that basically took me out of there.  For a brief second come around, it is like a

24

25    [5]  At his deposition, plaintiff testified that he took "two to three Tylenol IIIs."  Deposition
of James Evans, attached as Exhibit to Declaration of James Evans, filed December 8, 2010
26 (hereafter Pl.'s Dep.), at 35:5-15.

1  thousand feet and fists is pounding on the back of my head, laughing, we got his ass out of

2  there." Pl.'s Dep. at 34:10-18; see also Pl.'s Dep. at 48:12-18. Plaintiff also testified that he was

3  not resisting officers at all after he was placed in handcuffs; he "wasn't kicking . . . wasn't

4  spitting at no staff or none of that" and that he was focused on trying to get the pepper spray out

5  of his eyes. Id. at 59:6-14. Plaintiff testified that he was kicked in his ribcage and shoulders and

6  punched four or five times in the back of his head. Id. at 63:15-64:24. There is no dispute that

7  defendants Terrazas and Nuehring were present during the use of force. Plaintiff testified at his

8  deposition that defendant Terrazas did say "Stop" during the use of force. Id. at 60:5-10.

9      After he was placed in leg restraints, plaintiff was taken first to the prison medical

10  clinic and then to an outside hospital. No physical injuries to plaintiff resulting from the cell

11  extraction were noted on either examination. Plaintiff contends he was not examined for those

12  injuries at the prison. Id. at 72:3-5. Plaintiff testified at his deposition that he had rib pain for

13  about two weeks following the incident and an abrasion on his head that lasted about two weeks

14  and caused "lingering headaches for awhile." Id. at 69:1-70:7.

15      On November 8, 2007, plaintiff was transferred to High Desert. On July 21, 2008,

16  there was a riot at High Desert. Plaintiff had to defend himself from attack by another inmate

17  during the riot.

18  II. Defendants' Motion

19      A. Eighth Amendment

20      Defendants Terrazas and Nuehring seek summary judgment on the grounds that

21  defendant Terrazas did not violate plaintiff's Eighth Amendment rights through use of excessive

22  force and that they are entitled to qualified immunity.[6]

23

24      [6] Defendants Terrazas and Nuehring also seek summary judgment on the ground that
neither was deliberately indifferent to an excessive risk to plaintiff's health or safety. The claim

25  raised against these two defendants is that they violated plaintiff's rights under the Eighth
Amendment through use of excessive force during a cell extraction. See Third Amended

26  Complaint, filed August 20, 2009, at 7. Plaintiff has not raised a claim of deliberate indifference
to his health or safety against defendants Terrazas and Nuehring. Accordingly, the court will not

1    1. <u>Merits</u>

2        The use of force against a prison inmate violates the Eighth Amendment only if is

3    applied "maliciously and sadistically for the very purpose of causing harm." <u>Whitley v. Albers</u>,

4    475 U.S. 312, 320–21 (1986).  Force that is used in "a good faith effort to restore discipline and

5    order" does not violate the Eighth Amendment.  <u>Clement v. Gomez</u>, 298 F.3d 898, 903 (9th Cir.

6    2002).

7        There are disputed issues of material fact which preclude a finding that defendants

8    Terrazas and Nuehring are entitled to summary judgment on plaintiff's Eighth Amendment

9    claim.  It appears that the force which plaintiff contends was excessive was the beating that

10   followed the use of the pepper spray.[7]  Specifically, defendants present evidence that the force

11   was applied because plaintiff was resisting orders to go to the ground and submit to leg restraints.

12   Plaintiff, on the other hand, has offered evidence that after he submitted to handcuffs he was not

13   providing any further resistance to the officers and was only trying to deal with the effects of the

14   pepper spray, that he was kicked and punched repeatedly, and that as he was being beaten he

15   heard officers laughing.[8]  Defendants also present evidence that plaintiff's medical records do not

16   reflect any report of physical injury from the use of force, but plaintiff has offered evidence that

17   he did sustain physical injuries to his ribcage, shoulders and head.

18       If plaintiff's version of events is believed, a reasonable jury could conclude that

19   the use of force exceeded what was required to maintain order and was imposed maliciously and

20   ─────────────

     reach that argument.

21

22       [7]  The undisputed facts of plaintiff's suicide threats, ingestion of prescription medication
     and refusal to comply with an order to be handcuffed suggest that defendant Terrazas' decision to
23   implement the protocol for cell extraction was made in a good faith effort to restore order, as was
     his use of pepper spray.

24       [8]  It is undisputed that neither defendant Terrazas or defendant Nuehring actually
     participated in the beating, and plaintiff's Eighth Amendment claim against these two defendants
25   proceeds on a theory of supervisory liability.  It is settled that "a prison official can violate a
     prisoner's Eighth Amendment rights by failing to intervene" to prevent a constitutional violation.
26   <u>Robins v. Meecham</u>, 60 F.3d 1436, 1442 (9th Cir.1995).

1  sadistically.  Defendants Terrazas and Nuehring are not entitled to summary judgment on the

2  merits of plaintiff's Eighth Amendment claim.

3        2.  Qualified Immunity

4        In Saucier v. Katz, 533 U.S. 194 (2001), the United States Supreme Court set

5  forth a two-part test for qualified immunity.  Id. at 201.  First, a court must consider whether,

6  based on the facts alleged in the light most favorable to the plaintiff, the officers violated a

7  constitutional right.  Id.  If no constitutional right was violated, then there is no further inquiry.

8  Id.  Second, if a right was potentially violated, the court must consider whether the right at issue

9  was clearly established.  Id.

10        For the reasons set forth in section IIA1, supra, the facts viewed in the light most

11  favorable to plaintiff could establish that defendants Terrazas and Nuehring violated his rights

12  under the Eighth Amendment by failing to intervene to stop the beating of plaintiff.[9]  Moreover,

13  it would have been clear to reasonable officers that allowing the beating to continue was

14  unlawful.  See Clement, 298 F.3d at 906 (quoting Saucier, 533 U.S. at 202). In October 2007, it

15  was clearly established that inmates were protected from wanton beatings that exceeded

16  correctional officers' good-faith efforts to address a violation of prison rules. See Martinez v.

17  Stanford, 323 F.3d 1178, 1180, 1184 (9th Cir.2003) (because the law regarding excessive force

18  was clearly established in 1994, qualified immunity was improperly granted to officers who

19  allegedly beat an inmate during a cell extraction despite the inmate's lack of resistance); McRorie

20  v. Shimoda, 795 F.2d 780, 784 (9th Cir.1986) (Eighth Amendment violated by an assault while

21  an inmate was not resisting).  Moreover, it was clearly established that significant injury is not

22  required to make out an Eighth Amendment violation. See Hudson v. McMillian, 503 U.S. 1, 7

23  /////

24

25      [9]  Plaintiff did testify at his deposition that defendant Terrazas said "Stop" during the
   beating.  It is unclear from plaintiff's testimony at what point during the beating defendant
26  Terrazas spoke, or specifically what the word "Stop" was directed at.

1  (1992).  It was also clearly established that supervisors could be liable for failing to stop

2  constitutional violations.  See Robins, 60 F.3d at 1442.

3        For the foregoing reasons, defendants' motion for summary judgment should be

4  denied as to defendants Terrazas and Nuehring.

5        B.  Transfer to High Desert

6        Defendants Singh and Telford seek summary judgment on the grounds that they

7  were not deliberately indifferent to plaintiff's safety when they recommended that he be

8  transferred to High Desert, and that they are entitled to qualified immunity.

9        There is no evidence that any of the defendants engaged in an unlawful conspiracy

10  in connection with plaintiff's transfer to High Desert, nor is there any evidence that either

11  defendant Singh or defendant Telford was aware of a risk of harm to plaintiff from the transfer to

12  High Desert.  Defendants Singh and Telford are entitled to summary judgment on this claim.

13        For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

14        1.  Defendants' November 30, 2010 motion for summary judgment be granted as

15  to plaintiff's claim against defendants Singh and Telford and denied as to plaintiff's Eighth

16  Amendment claim of excessive force against defendants Terrazas and Nuehring; and

17        2.  This matter be referred back to the undersigned for further pretrial proceedings.

18        These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

23  objections shall be filed and served within fourteen days after service of the objections.  The

24  /////

25  /////

26  /////

1 parties are advised that failure to file objections within the specified time may waive the right to

2 appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3 DATED: August 12, 2011.

4

5

UNITED STATES MAGISTRATE JUDGE

6

7 12
8 evan0292.msj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26