UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EVANS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>J. NUEHRING, et al.,<br><br>　　　　　Defendants. | No. 2:09-cv-00292 TLN AC<br><br><br>FINDINGS AND RECOMMENDATIONS |

On August 13, 2014, the undersigned held a hearing on defendant's motion to dismiss the action for perjury (ECF No. 181). Aldon L. Bolanos appeared for plaintiff. Deputy Attorney General David A. Carrasco appeared for the defendants. On review of the parties' briefs and upon hearing the arguments of counsel, THE COURT FINDS AS FOLLOWS:

I.     RELEVANT BACKGROUND

    A. Factual Allegations

Plaintiff is a California state prisoner seeking relief pursuant to 42 U.S.C. § 1983. The case proceeds on a claim of excessive force against defendant correctional officers. On October 3, 2007, plaintiff was forcibly removed from his cell at CSP-Solano. Plaintiff was housed alone in the Administrative Segregation Unit, and was informed that he was being transferred to High Desert State Prison (HDSP). Plaintiff became distraught, threatened to kill himself by taking prescription medication, and held up a razor. Defendants Nuehring and Terrazas tried to

convince plaintiff to submit voluntarily to handcuffs so that he could be transported to HDSP. After plaintiff repeatedly refused, defendant Terrzaza performed an emergency cell extraction. Terrazas pepper-sprayed plaintiff through the cell's food port, after which plaintiff submitted to being placed in handcuffs. He was removed from the cell. The complaint alleges that plaintiff was then "brutally beat[en]. . . into submission." ECF No. 16 at 7.

### B. Procedural Background

Plaintiff commenced this action in pro per, and was unrepresented through the discovery period and dispositive motions. Plaintiff's deposition was taken on September 9, 2010. Discovery closed on September 10, 2010. ECF No. 66. On September 20, 2011, summary judgment was granted as to plaintiff's Eighth Amendment claim against defendants Singh and Telford, and denied as to defendants Terrazas and Nuehring. ECF Nos. 99 (Findings and Recommendations), 104 (Order adopting Findings and Recommendations). The case has been proceeding toward trial in fits and starts ever since.

On November 2, 2011, plaintiff filed a pro se pretrial statement in which he stated that the only "witness" he needed was the video of the cell extraction. ECF No. 110.[1] In the pretrial order filed February 7, 2012, Judge Moulds ordered defendants to inform plaintiff and the court in writing whether the videotape exists or ever existed. ECF No. 121 at 5. On February 15, 2012, counsel for defendants filed a declaration averring that on December 6, 2011, he had asked the litigation coordinator at Solano if she could locate a videotape of the incident. ECF No. 122. Counsel further averred that on December 8, 2011, the litigation coordinator told him that while the incident report indicated the extraction had been videotaped, no videotape could be located. ECF No. 122 at 1-2. Plaintiff filed a response to that declaration, complaining about defense counsel's failure to bring this information to the attention of plaintiff or the court, even though counsel had the information prior to issuance of the pretrial order. ECF No. 124.

On April 12, 2012, Judge Moulds appointed counsel to represent petitioner. ECF No. 125.

---

[1] The incident report regarding the cell extraction specified that it had been video recorded.

2

1    The case was first set to be tried to a jury on June 19, 2012, but that date was continued
2    and then vacated because plaintiff's detention in Santa Clara County in another case precluded his
3    transfer to this court. See ECF Nos. 125, 131, 135, 152, 153. The case was subsequently
4    reassigned to newly appointed district and magistrate judges (ECF Nos.163, 166), and trial was
5    eventually reset for March 24, 2014 (ECF No. 165). That date was also vacated, and trial is
6    currently scheduled for December 15, 2014, before District Judge Troy L. Nunley. ECF No. 180.

7    According to the Declaration of David A. Carrasco, the CSP-Solano litigation coordinator
8    notified counsel for defendants in late March 2014 that the videotape of plaintiff's cell extraction
9    had been discovered. ECF No. 181-2. Counsel for defendants received a copy of the video
10   recording on April 24, 2014, and mailed a duplicate copy to plaintiff's counsel on April 28, 2014.
11   Id. The court was notified of the tape's discovery on July 2, 2014, and a copy of the disk was
12   lodged on that date. ECF No. 182.

13   On July 2, 2014, defendants filed the instant motion to dismiss, on grounds the videotape
14   demonstrates that plaintiff's deposition testimony about the cell extraction was perjured. ECF
15   No. 181. Plaintiff opposes the motion, and defendants have filed a reply. ECF Nos. 187, 188.

16   II.    LEGAL STANDARDS

17   District courts have inherent authority to sanction parties who provide false testimony or
18   engage in deceptive conduct. Fink v. Gomez, 239 F.3d 989, 994 (9th Cir. 2001). The sanction of
19   dismissal is available where a party's "non-compliance is due to willfulness, fault, or bad faith."
20   Sigliano v. Medoza, 642 F.2d 309, 310 (9th Cir. 1981). Dismissal is an appropriate sanction for
21   falsifying evidence, including deposition testimony. Combs v. Rockwell Int'l Corp., 927 F.2d
22   486, 488 (9th Cir. 1991) (affirming dismissal with prejudice where counsel falsified transcript of
23   deposition); see also Brown v. Oil States Skagit Smatco, 664 F.3d 71 (5th Cir. 2011) (dismissal
24   with prejudice was warranted for plaintiff's perjury at his deposition); Chavez v. City of
25   Albuquerque, 402 F.3d 1039 (10th Cir. 2005) (same); Allen v. Chicago Transit Auth., 317 F.3d
26   696, 703 (7th Cir. 2003) (same).

27   In the criminal context, perjury is defined as "false testimony concerning a material matter
28   with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or

3

faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993); see also 18 U.S.C. § 1621. Perjury clearly constitutes "bad faith" for purposes of discovery sanctions. See Combs, 927 F.2d at 488-89.

### III.   PLAINTIFF'S DEPOSITION TESTIMONY

At his deposition, plaintiff testified that after he was pepper sprayed he was "basically immobile" and officers "ran up in there with the gear on and dragged me out there and slammed me on my head, they slammed me face forward to the ground. I am going like this to the ground, that basically took me out of there. For a brief second come around, it is like a thousand feet and fists is pounding on the back of my head, laughing, we got his ass out of there." Pl.'s Dep. at 34:10-18; see also Pl.'s Dep. at 48:12-18. Plaintiff testified that he was not resisting officers at all after he was placed in handcuffs; he "wasn't kicking . . . wasn't spitting at no staff or none of that" and that he was focused on trying to get the pepper spray out of his eyes. Id. at 59:6-14. Plaintiff also testified that he was kicked in his ribcage and shoulders and punched four or five times in the back of his head. Id. at 63:15-64:24.

### IV.   THE VIDEOTAPE

The video recording shows two uniformed correctional officers speaking in turn to an inmate through a closed cell door, as other officers in white hazmat suits and masks, at least one of whom is carrying a shield, gather in the vicinity. The first officer then repeatedly dispenses spray from a canister through the food port of the door. The inmate eventually presents his wrists through the door to be handcuffed. The door is then opened and the inmate is brought out of the cell and quickly surrounded by six to eight officers in hazmat suits. Because these officers block the view of the door, it is impossible to see precisely how the inmate is removed from the cell. The inmate is brought down to the floor adjacent to the cell door and surrounded by officers who are hunched down around him. The inmate is not clearly visible in the midst of the huddle before, during or after he is rendered prone, and the means by which he is brought to the floor cannot be seen. None of the officers visibly punch or kick the inmate. None of the officers make visible movements that are consistent with punching or kicking. The view of some officers is consistently obscured by other officers. The camera primarily shows the backs of the officers

1  closest to the camera, and does not show how the officers are handling the inmate on the ground.
2  After approximately 25 seconds on the ground, the inmate is brought to his feet and walks
3  escorted to a stretcher on a vehicle parked just outside the building.  The vehicle drives away.

### V. DISCUSSION

The videotape does not support plaintiff's allegations or corroborate his deposition testimony.  However, unsupported or even inaccurate deposition testimony is a very far cry from perjury.  For the reasons that follow, the undersigned finds no basis for a conclusion that plaintiff deliberately lied at his deposition.

The court notes first that the videotape (assuming its authenticity) does not affirmatively or conclusively disprove plaintiff's allegations that he was struck in the head and/or ribs as he lay handcuffed on the ground immediately following the cell extraction.  The video does not show any blows or any body movements by correctional officers that are consistent with the infliction of blows.  However, plaintiff's head and ribcage are not directly visible in this portion of the videotape, nor are all the limbs of all the correctional officers surrounding him.  Moreover, given plaintiff's undisputed state of emotional distress at the time of the incident, the fact that he had just been pepper-sprayed when he was subdued, his ongoing distress about the incident as reflected in his administrative appeals and pro se filings, and the passage of time between the cell extraction and the deposition, discrepancies between the videotape and the deposition testimony could be "the result of confusion, mistake, or faulty memory." Dunnigan, 507 U.S. at 94.  Testimony that reflects a witness's subjective experience, even if exaggerated, or that is the product of confabulated memory influenced by emotional factors, may be inaccurate but is not necessarily willfully false.  Accordingly, the videotape is insufficient to prove perjury and therefore does not support the ultimate sanction of dismissal.

Defendants argue that the videotape so discredits plaintiff's case that it would waste judicial resources to proceed to trial.  Be that as it may, the Federal Rules of Civil Procedure do not provide for dismissal at this stage of litigation on grounds that newly discovered evidence renders a jury verdict for plaintiff unlikely.  The dispositive motions deadline in this case has long since passed.  The videotape came to light too late – literally years too late – for defendants to

rely on it in summary judgment. Although defendants and their counsel may not be responsible for the long absence of the videotape, they are not therefore excused from the consequences of that absence. The circumstances regarding the prison's "loss" and belated "discovery" of the tape are not before the court, and are irrelevant in any case to the only question presented here: whether dismissal with prejudice is an appropriate sanction for plaintiff's alleged perjury. Because the undersigned finds that perjury has not been established, the motion to dismiss should be denied.

Defendants argued for the first time at the hearing on the motion that the court should conduct an evidentiary hearing and require plaintiff to testify before making any findings regarding perjury. Such a hearing would waste judicial resources and amount to an unauthorized second deposition of the plaintiff. There is an insufficient evidentiary basis to support further proceedings regarding perjury. Plaintiff's credibility, and the truth of his allegations, are issues for the jury.

In opposition to the motion, plaintiff argues among other things that the videotape is inadmissible at trial. The admissibility of evidence at trial is not before the undersigned. Motions in limine should be directed to the district judge at the appropriate time.

## CONCLUSION

For the reasons explained above, IT IS HEREBY RECOMMENDED that defendants' motion to dismiss, ECF No. 181, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

////

////

////

1  advised that failure to file objections within the specified time may waive the right to appeal the
2  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3  DATED: August 13, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE